IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MAGNUS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 10-1422-KHV |
| DIAMOND STATE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff brings this diversity action against Diamond State Insurance Company ("Diamond"), alleging breach of insurance policies. Specifically, plaintiff contends that defendant breached its polity to insure and defend Precision Designed Products ("PDP") in a lawsuit in Montgomery County, Kansas District Court, Case No. 2008-CV-119 I, captioned Magnus, Inc. v. Keith Jabben d/b/a Precision Designed Products. To settle that case, PDP assigned its claims against defendant to plaintiff, which then brought this action.

This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #17) filed July 11, 2011 and defendant's Request For Oral Argument On Defendant's Motion For Summary Judgment (Doc. #23) filed October 31, 2011[1]. Defendant seeks summary judgment, arguing that it owed no duty to defend or indemnify PDP in the underlying lawsuit.[2]

---

[1] The Court finds that oral argument would not materially assists its consideration of defendant's summary judgment motion and thus overrules the Request For Oral Argument On Defendant's Motion For Summary Judgment (Doc. #23) filed October 31, 2011.

[2] Defendant purports to bring its motion for summary judgment under K.S.A. § 60-256 and Kansas Supreme Court Rule No. 141. These rules apply to Kansas state courts, not federal courts such as this, which follow the Federal Rules of Civil Procedure. See Fed. R. Civ.
(continued…)

For reasons stated below, the Court sustains defendant's motion for summary judgment.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252. The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those "dispositive matters for which [she] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on her pleadings but must set forth specific facts. Id. The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789,

---

P. 1. Because defendant seeks summary judgment, the Court assumes defendant brings its motion under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1.

2

794 (10th Cir. 1988). If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. Liberty Lobby, 477 U.S. at 250-51.

### Facts

The material facts, with disputes resolved in plaintiff's favor, are as follows:[3]

Mike Sohm is President of Magnus, an archery and archery products business. Keith Jabben owns and operates PDP, a company which manufactures arrow components for the archery industry. In 2002, Magnus contracted with PDP to manufacture broadhead adapters (arrow inserts). Sohm and Jabben provide conflicting testimony about the manufacturing agreement, but both agree that (1) Magnus asked PDP to manufacture the adapters out of aluminum of 7075-T6 hardness and (2) PDP manufactured the arrows out of 2011 aluminum, which is softer than 7075-T6 aluminum.

PDP began providing adapters without specifying to Magnus the grade of aluminum it used to manufacture them. Based on PDP's representation, Magnus assumed, that PDP was making the adapters out of 7075-T6 or 6061 grade aluminum (which is softer than 7076-T6 aluminum, but harder than 2011 aluminum). In 2002 or 2003, customers began complaining to Sohm, who relayed the complaints to Jabben. Sohm says that Jabben then told him that PDP had been manufacturing the adapters out of 6061 grade aluminum (which is softer than 7075-T6) because it did not have 7075-T6 aluminum. In March of 2004, Sohm told PDP that Magnus was

---

[3] Neither party has complied with D. Kan. Rule 56.1 or Fed. R. Civ. P. 56(c)(1). Defendant begins its motion with a section of stipulated facts, some of which contain no citation to the record. This violates both Fed. R. Civ. P. 56(c)(1) and D. Kan. Rule 56.1(a). For purposes of this motion, however, the Court may consider these facts undisputed under Fed. R. Civ. P. 56(e)(2), and it has elected to do so here. Further, defendant failed to respond to plaintiff's statement of additional material facts, which are thus deemed admitted, for the most part. See D. Kan. Rule 56.1(c). Many of plaintiff's purported factual statements include self-serving legal conclusions, which the Court disregards. See KMMentor, LLC v. Knowledge Mgmt. Prof. Soc., Inc., 712 F. Supp.2d 1222, 1250 (D. Kan. 2010). Immaterial facts have also been omitted.

3

having serious issues with the broadhead adapters and reiterated in writing that under no circumstances could PDP make the adapters of 2011 or 2000 series material.  It stopped using PDP adapters once it suspected that they were defective.  Under its lifetime guarantee, Magnus replaced the defective parts of customers who complained about the PDP adapters.

Arrow components include a broadhead/adapter/socket combination which can be screwed on and off of the shaft of a hunting arrow.  This allows hunters to remove broadheads (blades) for storage and to interchange different types.  Because the adapters in this case were manufactured from aluminum which was too soft, they could not be screwed off of the arrow shaft once they were attached, thus substantially diminishing the functionality of the arrows.

Testing confirmed that PDP manufactured the adapters with 2011 grade aluminum.  On February 4, 2008, Magnus sued PDP in Ellis County, Kansas district court, alleging breach of contract and breach of warranties under Article 2 of the U.C.C.[4]  Specifically, Magnus claimed that PDP had failed to manufacture the adapters to Magnus specifications and that the adapters damaged the hunting arrows which incorporated them, causing Magnus to eventually withdraw the adapters from the market.  As a result, Magnus alleged damages based on repair and replacement costs and harm to its business reputation.

According to Sohm, the only problem with the adapters was that they were made out of 2000 series aluminum.  Magnus retained an expert, Steven D. Regier, C.P.A., to provide testimony regarding damages.  Regier prepared a report which showed that sales decreased between 2004 to 2009 because of the nonconforming adapters and estimated past and future lost earnings of Magnus at $284,519.75.

---

[4] The case was later transferred to the district court of Montgomery County, Kansas.

PDP notified its insurer (Diamond) of the lawsuit on August 9, 2009. On August 13, Diamond denied the claim on various grounds and also questioned whether late notice voided coverage. Specifically, Diamond stated:

> As you can see from the policy language, forms, conditions, definitions and exclusions [t]here is no coverage for property damage to your work/your product, nor for a defect, deficiency, inadequacy or dangerous condition in [y]our work/work product, or for a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms, nor for any loss, cost or expense incurred by you or others for the loss of use, recall repair, replacement, adjustment, removal or disposal of your work/work product. There is no coverage for you/your company for any intentional acts or for any contractual liability. There is no coverage for property damage arising out of the use, or sale of firearms or other weapons. There would be a question of coverage due to late notice as well. . . . Diamond State Insurance Company does not waive any of its rights under the policy and specifically reserves its right to alter or amend its coverage position should its receipt of further information warrant such a determination.

On June 15, 2010, Jabben agreed to confess judgment and assign his policy rights to Magnus to settle the case. On June 22, 2010, Jabben confessed judgment in favor of Magnus for $234,519.75.

In this case, Magnus claims that the defective adapters damaged its customers' arrows—damage which qualifies as "property damage" and is covered under the terms of the policy.

Under the policy, "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy insures "property damage" only if is caused by an "occurrence."

## Analysis

Plaintiff alleges a state law clam for breach of contract. Defendant seeks summary judgment, to which it is entitled if it properly denied coverage.

Defendant argues that the policy affords no coverage because (1) the acts which were the subject of the underlying lawsuit were intentional and thus are not "occurrences" under the terms of the policy;[5] and (2) the underlying claims fall under the "your product," "your work" and "recall of products, work or impaired property" policy exclusions. Plaintiff counters that the underlying suit *actually* involved accidental property damage to its customers' arrows which was caused by the faulty adapters and is thus covered under the policy. Because this is a diversity action, the Court applies the substantive law of the forum state, in this case Kansas. Advantage Homebuilding, LLC. v. Md. Cas. Co., 470 F.3d 1003, 1007 (10th Cir. 2006).

Defendant argues that the policy affords no coverage because the acts which were the subject of the underlying lawsuit were intentional and thus not "occurrences" sufficient to trigger coverage. Defendant primarily cites Maryland Cas. Co. v. Mike Miller Cos., Inc., 715 F. Supp. 321 (D. Kan. 1989) (applying Kansas law), which the Court finds persuasive. In Maryland Casualty, the defendant was sued in state court after refusing to complete excavation work. It then sued its insurance company alleging failure to defend. In the second suit, the court analyzed the policy, which provided coverage only in the event of an "occurrence," which it defined as an "accident." The court concluded that the insurer could only be liable if plaintiff in the underlying suit alleged damages which were the result of accident. Because the alleged damages resulted from defendant's willful refusal to perform its contractual obligations, the court granted summary judgment to the insurance company. Id. at 323.

---

[5] Plaintiff argues that the Court should disregard defendant's intentional conduct argument because defendant does not base its summary judgment motion on the exclusion for "expected or intentional injury" upon which it purportedly initially denied coverage. Plaintiff ignores the fact that defendant's denial of coverage letter enumerated multiple grounds upon which it denied coverage, and specifically stated that "[t]here is no coverage for you/your company for any intentional acts or for any contractual liability."

Similarly, in this case PDP purposefully manufactured the adapters out of 2011 grade aluminum and no one asserts otherwise. In the underlying lawsuit, Magnus sought damages based on repair and replacement costs and harm to its business reputation caused by PDP having manufactured the adapters out of 2011 grade aluminum. In the underlying case, Magnus steadfastly asserted that plaintiff's willful conduct, i.e. its manufacture of adapters with 2011 grade aluminum, caused the breach of warranty and contract damages which it sought. It did not seek to recover tort damages on behalf of itself or derivatively on behalf of its customers whose arrows were ruined by the adapters. The underlying suit did not (and could not) state a claim for property damage, because Magnus did not own the property which was allegedly damaged. Thus, plaintiff's argument that the arrow damage was accidental is inapposite. The Court finds that no "occurrence" occurred under the policy, and it therefore declines to address defendant's remaining arguments.

**IT IS THEREFORE ORDERED that** Defendant's Motion For Summary Judgment (Doc. #17) filed July 11, 2011 be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED that** defendant's Request For Oral Argument On Defendant's Motion For Summary Judgment (Doc. #23) filed October 31, 2011 be and hereby is **OVERRULED**.

Dated this 6th day of March, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge